**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**I.I.M.**,

Petitioner,

v.

**LAURA HERMOSILLO**, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; **KRISTI NOEM**, in her official capacity as Secretary, U.S. Department of Homeland Security; **PAMELA BONDI**, Attorney General of the United States; **TODD LYONS**, Acting Director of Immigration Customs Enforcement; **U.S. DEPARTMENT OF HOMELAND SECURITY**; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; and **U.S. DEPARTMENT OF JUSTICE**,

Respondents.

Case No. 3:25-cv-2322-SI

Agency No. AXXX-XXX-945

**ORDER**

**Michael H. Simon, District Judge.**

Petitioner I.M.M. is a citizen of Somalia. He was tortured and persecuted by the terrorist group Al-Shabab. In 2010, he fled to South Africa and was granted refugee status. But after many instances of harm in South Africa, he fled to the United States in 2024. On November 5, 2024, he was issued a Notice to Appear, which indicates he is in removal proceedings under 8

U.S.C. § 1229a. *See* 8 U.S.C. § 1229 (titled "Initiation of Removal Proceedings" ) (establishing, among other things, that "[i]n removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien" providing specific information). Respondents, however, did not file a Notice to Appear in immigration court to formally commence removal proceedings. *See Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) ("Proceedings are initiated under 8 U.S.C. § 1229(a), also known as 'full removal,' by filing a Notice to Appear with the Immigration Court." (quoting *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011))).

On May 2, 2025, Petitioner filed an application for asylum, which U.S. Citizenship and Immigration Services accepted. On July 14, 2025, Petitioner was issued an Immigration and Customs Enforcement ("ICE") Form I-220A, release on his own recognizance. The ICE Form I-220A specifically references § 1226, which applies when a noncitizen is placed in § 1229a removal proceedings. *See generally* Form I-220A (stating on page one that "[y]ou have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance"), https://www.ice.gov/doclib/detention/checkin/ I_220A_OREC.pdf. At that time, he was directed to appear on January 12, 2026, between 8:00 a.m. and 3:00 p.m. at the ICE office located at 4310 S. Macadam Ave., Portland OR 97239, for a supervisory check-in.

On Tuesday, December 2, 2025, President Donald Trump made remarks in which he described Somali nationals as "garbage" that he does not want in the United States. *See* Zolan Kanno-Youngs and Shawn McCreesh, *Trump Calls Somalis 'Garbage' He Doesn't Want in the*

*Country*, N.Y. Times, Dec. 2, 2025, https://wwwnytimes.com/2025/12/02/us/politics/trump-somalia.html. At around the same time, Petitioner received revised instructions to report to ICE on December 16, 2025, between 3:00 p.m. and 4:00 p.m., to check in.

Because the ICE facility in Portland does not have a detention center, there is a bus to take persons to the Tacoma, Washington detention center, which generally leaves at around 4:00 p.m. Petitioner is concerned that the change to his check in time from a broad check-in window, as is normal, to a specific and narrow timeframe near the departure time for the bus to Tacoma, indicates that Respondents intend to revoke his release, detain him, and transport him to Tacoma

Petitioner has filed a Petition for Writ of Habeas Corpus. ECF 1. He alleges that Respondents intend to revoke his release and detain him, which will violate the Administrative Procedure Act ("APA") and his Fifth Amendment Due Process rights. He also has filed a Motion for Temporary Restraining Order, ECF 2, requesting that the Court prevent Respondents from detaining and transporting Petitioner outside the District of Oregon and ordering Respondents to show cause within three days why the Petition should not be granted.

**STANDARDS**

Under the All Writs Act, 28 U.S.C. § 1651, the Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Even if the Court's jurisdiction over Petitioner's claim may be subject to dispute by Respondents, which has not yet been determined, "[a] federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established." *See ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978); *see also Belbacha v. Bush*, 520 F.3d 452, 455-56 (D.C. Cir. 2008) ("If a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction."). Accordingly, the Court

may "issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it." *See ITT Cmty. Dev.*, 569 F.2d at 1359 n.19.

**DISCUSSION**

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025). The Trump administration, however, revised its § 1225 designation to "apply expedited removal to the *fullest extent authorized by statute*." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). This included dismissing ongoing asylum cases and placing noncitizens into expedited removal, including those who previously had been released under § 1226(a) or paroled under § 1182(d)(5). *See, e.g.*, *Salcedo Aceros*, 2025 WL 2637503, at *4 ("Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision (citation omitted)); *Rodriguez Cabrera v. Mattos*, 2025 WL 3072687, at *3 (D. Nev. Nov. 3, 2025) (describing DHS's "sweeping new policy [that] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents to enable them to challenge the government's basis for detaining them" (emphasis in original)).

Courts overwhelmingly have rejected this process, whether the noncitizen originally was released under § 1226(a) or § 1182(d)(5), as unlawful. *Rodriguez Cabrera*, 2025 WL 3072687, at *3 (explaining that "[t]he overwhelming majority of district courts across the country,

including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful" (gathering cases)); *see also Perez v. LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025) (gathering cases); *Faizyan v. Casey*, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (gathering cases).

Given Respondents' sweeping policy of revoking release and detaining asylum applicants, the unexplained change to Petitioner's check-in time, and the narrowing of Petitioner's check-in time frame, the Court finds that Petitioner has shown a reasonable likelihood that his release will be revoked at his December 16, 2025 check in. If Petitioner were arrested or detained for immigration purposes, he would likely quickly be transferred out of the District of Oregon because there is no immigration detention center in Oregon. If Petitioner were transferred out of the District of Oregon, it could potentially create jurisdictional problems over Petitioner's habeas case challenging the merits of the revocation of his release. Thus, the Court finds that it is necessary in aid of its jurisdiction that Petitioner not be transferred out of the District of Oregon or deported, at least until the parties have litigated the merits of Petitioner's Petition.[1] The Court denies as moot Petitioner's temporary restraining order under Rule 65 of the

[1] Courts around the country exercise their authority under the All Writs Act to maintain their jurisdiction over pending immigration matters by preserving the status quo. *See, e.g.*, *J.A.V. v. Trump*, 780 F. Supp. 3d 705, 708 (S.D. Tex. Apr. 24, 2025) (enjoining respondents under the All Writs Act from "transferring, relocating, deporting, or removing" any petitioner outside of the Southern District of Texas because "maintaining the status quo is required to afford the Court the ability to consider the request for a preliminary injunction and other forms of relief . . . and to prevent the immediate and irreparable injury that may occur with the immediate removal of any [petitioner]"); *Du v. U.S. Dep't of Homeland Sec.*, 2025 WL 1317944, at *1-2 (D. Conn. Apr. 24, 2025) (enjoining the defendants from removing and deporting any of the plaintiffs from the District of Connecticut in order to preserve the status quo and maintain the court's jurisdiction over the case pending ruling on the motion); *Doe v. Bondi*, 2025 WL 1870979, at *1-2 (S.D. Cal. June 11, 2025) (explaining that "[f]ederal courts retain jurisdiction to preserve the status quo while determining whether [they have] subject matter jurisdiction over a case and while a petition is pending resolution from the court" and finding that "a limited-duration stay to maintain the *status quo* is appropriate because it will allow the Court to hold a hearing and

Federal Rules of Civil Procedure, because the relief granted under the All Writs Act is sufficient at this stage of the litigation. Petitioner may file a motion for preliminary injunction or renewed motion for TRO, if necessary and appropriate.

## CONCLUSION

The Court ORDERS Respondents not to arrest, detain, or deport Petitioner based on his immigration status during the pendency of this case, absent further order of this Court. This Order is without prejudice to the Court considering the merits of parties' arguments in later briefing. The Court DENIES AS MOOT Petitioner's motion for temporary restraining order, ECF 2. The parties are directed to confer and submit a proposed briefing schedule for the Petition and any preliminary injunction motion. Petitioner shall promptly serve a copy of this Order upon Respondents and the United States Attorney for the District of Oregon, Scott Bradford (usaor.civilhabeas@usdoj.gov). The Court Clerk shall also serve a courtesy copy on the United States Attorney.

**IT IS SO ORDERED.**

DATED this 15th day of December, 2025.

Michael H. Simon
United States District Judge

provide a reasoned decision to the request at hand"); *Batooie v. Ceja*, 2025 WL 1836695, at *2 (D. Colo. July 3, 2025) (enjoining the defendants from removing the petitioner from the District of Colorado pursuant to the All Writs Act and Rule 65(b) of the Federal Rules of Civil Procedure in order to preserve the court's jurisdiction); *E-C-R- v. Noem*, 2025 WL 2300543, at *1-2 (D. Or. July 16, 2025) (enjoining the same with respect to a plaintiff from the District of Oregon).